Good afternoon. May it please the court, Brandon Buck, appearing on behalf of the appellants. I would like to reserve four minutes of rebuttal time for my co-counsel, Peter Mehta, seated to the left. I'd like to start with a recent case that actually came out of the Sixth Circuit on January 3, 2019. It's not in the briefing, but it reaffirms the summary judgment standard for 1983 excessive force claims. It's called CAHOO versus SAS Analytics. And that recent decision involving an unemployment insurance dispute with the state of Michigan, again reaffirmed and reiterated that in a 1983 action, a plaintiff has to allege, improve with admissible evidence, with particularity what each individual actor has done. And that has been the prevailing standard in the Sixth Circuit for quite some time. We cite numerous other cases in our briefing to support that. But I'd like to quote one sentence out of that CAHOO case, which I think sort of foreshadows this case in a summary judgment context. And this court recently stated in the CAHOO case, if plaintiffs hope to survive a motion for summary judgment, they must provide evidence to support their allegations, particularly in regards to the actions taken by each individual agency defendant. So if there were any doubt as to the continued viability of that summary judgment standard, I think that's just been reaffirmed. Suppose hypothetically that these officers each wore masks so that they could not be identified. And that there were four officers involved and that they were all engaged in hypothetically, I'm making this up, actually beating a subdued prisoner. But because they were wearing masks, they could not be identified. But it was apparent from their reports within the prison that they were there, because they did say they were there. Would the fact that they couldn't be identified individually as to which one hypothetically had hit or kicked or stepped on or whatever the particulars of the force were, would that be a situation where you would make the same argument that because there isn't an identification that Officer A did something and Officer B did something else, that therefore the officers should escape any liability? I think that pattern you just described is much more akin to the Greer case, which involved a midnight ski mask raid, shotguns held to the head, refusal to disclose badge numbers, patches over the badge numbers. When they were asked for identification, they said, you can refer to me as being a member of this team. And instead, fast refusal to provide any identification. So I think Greer addresses that. And I think on the continuum of intentional concealment on the right and no concealment, we're all the way over on the left. This plaintiff alleges that she was placed in a spit mask and that it obscured her vision. So she did not know who was doing what. She did not know, she says, who searched her in an invasive fashion. So why are her allegations, and I understand they're just allegations, but why are they any different than the officers wearing ski masks? I can give five specific references to evidence in the record why I think that it's not comparable. First of all, it's undisputed on the record before the court that this particular inmate was being combative, disruptive, unruly, and spitting at the officers. She was stopped for an OUIL. I think she blew a .32 with her child in the car. It was obviously a very upsetting situation. It was not an easy arrest. And that necessitated her being transferred from the local Bloomfield Township Jail to a, what I'll call, higher level facility that... What happened to the child? The child was, I believe, taken in by the police officers and released to another parent during the arrest. But the point of that is that there's testimony in the record by the plaintiff herself indicating that she was being loud, she was being unruly, and so on and so forth. Doesn't that go to the question whether the force was excessive? Not to the point that you were making to start out with, that the plaintiff must allege what each individual has done. I thought your focus was on... She hasn't pointed out that Officer A did a particular action that she calls wrong, and Officer B did a different one. So you've mentioned three things that I don't see how they're going to answer my problem. Number one, I think the summary judgment standard is very clear, that in order for a plaintiff to survive summary judgment on this fact pattern, the plaintiff must create a genuine issue of material fact as to what each individual actor has done. And the only other exception that I'm aware of that is this line of cases like Burley 1, Burley 2, Greer, and Binet, which involve completely different fact patterns of intentional concealment. Now, it's interesting because I think the district court here... There's two fundamental errors in my opinion. Number one, it did not apply the summary judgment standard. I think we can all agree on that. On the record before it, it didn't try to engage in a particular assessment of each person's conduct. And frankly, it couldn't, based on the record. Then it turned to the intentional concealment cases, and it said two things which I think are quite interesting. First, the court held that an intent to conceal is not dispositive. That's contrary to all the cases that deal with intentional concealment, like Greer, like Burley 1, Burley 2, and Binet. The critical factor in all of those cases, as I read them, was that we're not going to reward deputies for concealing their identity. We're not going to immunize them. So when the district court, I think when it realized that there was no evidence in the record of intentional concealment, and in fact it issued a finding on page 7 of the opinion, the district court judge indicated that there's no evidence of bad faith. So the district court concluded, by way of finding based on the record, that there was no intent to conceal. And then the next step in the analysis was it said, well, I can solve this problem. Intent to conceal doesn't matter. Well, I think it's the only thing that matters when you're going to apply an exception to the summary judgment standard. So for me, I think you have to put this case into one of two boxes. You have a box of intentional concealment, where you have all these cases that have officers that are wearing ski masks, they say I'm a member of Team 11, they stonewall in discovery, they don't release police reports. And then the other standard is where you don't have intentional concealment, and that's the well-established summary judgment standard where a plaintiff is absolutely required to plead and prove what each particular individual defendant did. Well, let's take a look at that for a minute. First of all, is there even an allegation in this case that there was intentional concealment? Well, it's interesting because... Yes or no? From the plaintiff's perspective, no. Okay. So box number one, you can throw out the window because it's got nothing to do with this case. Box number two, unlike some of the cases, including the very appropriate hypothetical that Judge Moore gave you, we know exactly what officers were involved here, with the exception of one officer who was misnamed and was dropped from the suit and no one's talking about him at all. But the police reports, the defendants don't deny that they were the four officers that were involved, right? Correct. So we don't have any identity issues. Now, there is case law from more than one place that talks about the duty to intervene, the duty you owe relative to intercede in wrongful contact by a brother officer, and you're pushing the particularity point way beyond what the case law in this situation calls for, in my opinion. I appreciate your perspective, and I think that all the cases we've cited, like Perschel, for example, the plaintiff in Perschel was able to give a very detailed account, which made it pretty clear about which officer engaged in which particular use of excessive force. I guess the example I would give is the real danger in lumping all the defendants together is a search, a Fourth Amendment violation. If you're part of a team that executes, unlawfully executes a search warrant in a raid, the wrongful act, the constitutional violation itself is perhaps crossing the threshold into the home. At that time, you've committed the wrong. Now, the Sixth Circuit has made it very clear that that's not the same standard for excessive force. Excessive force has to be much more closely tied to an individual by its very nature. If you're going to allege that a particular person of a team struck you, you have a burden to show with some specificity that it was one of five officers that struck you. So I suppose that's the example. If the individual, hypothetically, is forced to the ground and forced to lie down with her head down and cannot identify which one it is, but it is very clear that one of the four struck her repeatedly, hypothetically, struck her repeatedly with a baton, you're saying in that circumstance, even though there's a duty of the other officers to stop excessive force and even though the individual involved who's forced to lie on the ground cannot see, you're saying that there cannot be a case going forward under those circumstances because the individual cannot identify which one did the beating, but everybody agrees that all four were there and any one of the other three could have stopped the beating. I'm out of time, but I'd love to answer your question. I think here, I don't necessarily disagree with your hypothetical, but here the failure to intervene claim is not fleshed out in any way. There's no evidence in the record that would support an inference or a conclusion that if one of the five officers did this, the other four had the means and opportunity to intervene or stop. There's no evidence in the record to that effect. We just don't have enough context, and I state that the plaintiff didn't carry her burden in providing even the most minute amount of detail that would lead us to believe Officer A was in the corner, Officer B was in the other corner, Officer C was hovering over her. At least that type of a fact pattern would lend itself to a much more detailed failure to intervene analysis. So that's why I don't think that that's the facts before the court. Thank you. Thank you. Good afternoon. Richard Moore here on behalf of the Appellee Plaintiff. To start off, I think that the hypothetical that was posed to Brother Counsel hits us right on the head. I mean, whether the ski masks are on the individual officers or placed over plaintiff, as was in this case, the effect is the same. They have taken an action that has concealed their identity so that when they then go, you have to tell us specifically what Officer A, B, and C did, each kick, punch, grope in this case. It puts the plaintiff in an impossible situation. Looking at the testimony on the record and summed up in the district court judge's opinion, I think that's exactly the case here. Plaintiff identified these four individuals as being in a room. This isn't a search case where you have people going all throughout a house and aren't necessarily there at any given time. We have four individuals in a room and taking the facts as the plaintiff has presented them as the non-moving party. We see an excessive force claim here through excessive groping of both her chest and genitalia, slapping and punching, and then they go, well, because you can't see, and the testimony was the spit hood went from the bridge of her nose down over her chin. Well, when she's forced on the ground and is being groped below the waist, there's no way for her to see whose hand is doing what. I think the plaintiff has sufficiently identified the four individuals, has shown that there has been excessive force, and that the four individual officers that were made either were using the excessive force or had a duty to step in and stop the excessive force as they were in the room observing it. I don't know if the panel has any questions for? Thank you. Thank you. Your Honors, Peter Mena also on behalf of the appellant. I want to thank the court for allowing me to present the rebuttal. I think what Mr. Buck made very clear and what I want to emphasize is if the court is going to create a third box, in other words, we know that there was no intentional concealment because the district court ruled there was no intentional concealment. We have, on the other hand, cases where someone can see perfectly fine, they're not intoxicated at all, and they could say, this officer did this, this officer did that. We don't have case law for a third box, for a middle box, where the court has ruled there's no intentional concealment, but where a plaintiff has also presented no evidence differentiating what officer did what. And so if that is what we are creating here, I think that needs to be a very intentional statement because we're dealing with the record from the district court. And we're dealing with a district court judge who found that the plaintiff was unable to identify conduct and that there was no intent to conceal. To answer the concerns about failure to intervene, even on a failure to intervene claim, there has to be some showing of individual liability because there still has to be a showing that that officer had the opportunity to observe what was happening and had the ability to intervene. So to say that a failure to intervene claim can survive in the ether without some sort of personal involvement, I don't think is correct. Is there evidence in the record, this is summary judgment, right? Yes, Your Honor. Is there evidence in the record that these four officers were in the room where the events were taking place? Yes, there is in the sense that they are all listed in a police report and they all acknowledged, though they may not remember the specific incident because it was years prior to their depositions, if they were listed in the police report, they were there. Well, actually they say they don't remember it at all. Correct, Your Honor. So how they particularize what they don't remember at all is another interesting question. You're absolutely right, they don't remember it at all. Okay, but the police... I'm absolutely right that that's what they say. Yes. The police report, which is generated by the police... Correct. ...says that these police officers were in the room. Yes, Your Honor. And the room is what kind of a room? It's a jail cell in the annex of the Oakland County Jail. Okay, so again, one would think that a jail cell is relatively small. Yes. And that the officers being in this small jail cell with the plaintiff here would have the ability to stop anything from happening or to remark upon that and deter their fellow officer from further proceeding. You would think that that would be a possibility. Wouldn't that be an inference on summary judgment that would be drawn? I think if you use Your Honor's hypothetical that you gave to Mr. Buck about a significant beating, multiple blows, yes. I think you're absolutely right. But I don't think that's what we have in this case, and I don't think the record supports being able to shift that hypothetical to our facts. And I'm out of time. Thank you. Thank you all for your argument. The case will be submitted. And would the clerk call the next case, please?